IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-63-D

EMMANUEL JEAN-FRANCOIS, )
ALICIA JOHNSON, and WANDA KING, )
on behalf of themselves and all others )
similarly situated, )
)
                        Plaintiffs, )
)
              v. )      **ORDER**
)
SMITHFIELD FOODS, INC., )
SMITHFIELD PACKAGED MEATS )
CORP., SMITHFIELD FRESH MEATS )
CORP., and SMITHFIELD )
DISTRIBUTION, LLC, )
)
                        Defendants. )

On April 19, 2022, Emmanuel Jean-Francois, Alicia Johnson, and Wanda King, on behalf of themselves and all others similarly situated (collectively, "plaintiffs"), filed a collective-action complaint against Smithfield Foods, Inc. ("Smithfield Foods"), Smithfield Packaged Meats Corporation ("Smithfield Packaged Meats"), Smithfield Fresh Meats Corporation ("Smithfield Fresh Meats"), and Smithfield Distribution, LLC ("Smithfield Distribution") (collectively, "defendants") alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, et seq. ("FLSA") [D.E. 1]. On May 27, 2022, defendants moved to dismiss the complaint or, in the alternative, to transfer proceedings to the Northern District of Illinois [D.E.11] and filed a memorandum in support [D.E. 12]. On October 24, 2022, plaintiffs filed a memorandum in opposition [D.E. 25]. On November 7, 2022, defendants replied [D.E. 26]. As explained below, the court denies defendants' motion to dismiss or transfer.

I.

Plaintiffs worked at defendants' pork processing, packaging, and distribution plants in North Carolina. See Compl. [D.E. 1] ¶ 26. Plaintiffs were paid hourly. See id. at ¶¶ 20–22. Plaintiffs allege that during the COVID-19 pandemic, defendants offered their hourly employees a so-called "responsibility bonus." See id. at ¶ 27. This "responsibility bonus" allegedly entitled hourly employees to a bonus of "$5 per hour for all regular hours worked up to and including forty in a workweek." Id. Defendants allegedly paid this "responsibility bonus" between April 1, 2020, and October 31, 2020. See id. at ¶ 28. Plaintiffs allege that defendants failed to include the "responsibility bonus" while calculating overtime pay. See id. at ¶ 28. As a result, plaintiffs allege that defendants underpaid plaintiffs for overtime pay during the period between April 1, 2020, and October 31, 2020. See id. at ¶ 35.

Before this action, defendants faced similar collective action lawsuits based on alleged violations of the FLSA regarding overtime payments and the "responsibility bonus." See Canas v. Smithfield Packaged Meats Corp., No. 1:20-cv-4937 (N.D. Ill. Aug. 21, 2020) (hereinafter, "Canas") and Winking v. Smithfield Fresh Meats Corp. & Smithfield Distrib., LLC, No. 1:22-cv-1937 (N.D. Ill. Apr. 14, 2022) (hereinafter, "Winking"). The Canas action involved defendants Smithfield Packaged Meats and Smithfield Fresh Meats but not defendants Smithfield Distribution or Smithfield Foods.[1] On September 13, 2021, the district court in Canas approved a settlement, and on June 9, 2022, the court dismissed with prejudice the Canas action. See Canas, [D.E. 55].[2] The Winking action involves defendant Smithfield Fresh Meats and Smithfield Distribution but not defendants Smithfield Foods or Smithfield Packaged Meats. On November 4, 2022, the district

---

[1] The Canas action also involved Kansas City Sausage Company, LLC, which is not a party in the action before this court.

[2] On June 1, 2022, defendants in the Canas action moved to reopen the case and consolidate the action with the Winking case [D.E. 60] and to modify the settlement [D.E. 62]. The district court denied defendants' motions without prejudice See Canas, [D.E. 80].

court in the Winking action approved a settlement between plaintiffs and Smithfield Distribution. See Winking, [D.E. 31]. The court dismissed the claims without prejudice as to Smithfield Distribution. See id. The claims in Winking against defendant Smithfield Fresh Meats remain pending, and plaintiffs in Winking have moved for collective-action certification. See id., [D.E. 22].

## II.

Defendants move to dismiss this action or, in the alternative, to transfer this action to the Northern District of Illinois based on the first-to-file rule. See [D.E. 12] 2. The first-to-file rule applies in cases where "a prior suit [is] pending in which all issues could be tried with equal facility." Carbide & Carbon Chems. Corp. v. U.S. Indus. Chems., Inc., 140 F.2d 47, 49 (4th Cir. 1944); see Remington Prod. Corp. v. Am. Aerovap, Inc., 192 F.2d 872, 873 (2d Cir. 1951) (per curiam); Hart v. Travelers Prop. Cas. Co. of Am., ___ F. Supp. 3d ___, ___, No. 5:21-CV-466, 2022 WL 2651842, at *9 (E.D.N.C. July 8, 2022). Under the first-to-file rule, the "first suit should have priority, absent the showing of balance of convenience in favor of the second action." Ellicott Mach. Corp. v. Mod. Welding Co., 502 F.2d 178, 180 n.2 (4th Cir. 1974) (quotation omitted); see Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 594–95 (4th Cir. 2004); Gibbs v. Stinson, 421 F. Supp. 3d 267, 286 (E.D. Va. 2019), aff'd sub nom. Gibbs v. Sequoia Cap. Operations, LLC, 966 F.3d 286 (4th Cir. 2020). "Ordinarily, the court first acquiring jurisdiction of a controversy should be allowed to proceed with it without interference from other courts under suits subsequently instituted." Carbide & Carbon Chems. Corp., 140 F.2d at 49. When applicable, under the first-to-file rule, the court may in its discretion consolidate the actions or otherwise dismiss the redundant action. See id.

Generally, in order for the first-to-file rule to apply, the other related action must be pending. See Hunter v. Agility Energy, Inc., No. 2:18-CV-618, 2019 WL 6118424, at *2 (D. Utah Nov. 18, 2019) (unpublished); Jackson v. Rhino Entm't Co., No. CV 16-01668, 2017 WL 8232807, at *5 (C.D. Cal. Feb. 22, 2017) (unpublished) ("[W]here, as here, the first-filed case is no longer pending

3

before another district court, it appears that the first-to-file rule has no application."); Critchlow v. Barcas Field Servs., LLC, No. 13-CV-01404, 2014 WL 1664819, at *1 (D. Kan. Apr. 25, 2014) (unpublished) ("The first-to-file rule is only appropriate when the actions of two competing courts are concurrent. Considering that the Oklahoma action has been dismissed, the Court finds that application of the first-to-file rule is now moot . . . ."); Merswin v. Williams Cos., Inc., No. 1:08-CV-2177, 2009 WL 249340, at *3 (N.D. Ga. Jan. 30, 2009) ("The first-filed rule has no application here because the Oklahoma action is no longer pending . . . ."); see also Alul v. Am. Honda Motor Co., Inc., No. 16-cv-04384, 2016 WL 7116934, at *5 (N.D. Cal. Dec. 7, 2016) (unpublished) (noting that it would not serve the purpose of "sound judicial administration, to send this case to a district where no similar case is pending." (citation omitted)). Generally a case that has settled, even if the court retains jurisdiction over the settlement, is not considered a pending action. See Stewart v. O'Neill, 225 F. Supp. 2d 16, 20 (D.D.C. 2002); Keepseagle v. Glickman, 194 F.R.D. 1, 2 (D.D.C. 2000).

"Courts within the United States Court of Appeals for the Fourth Circuit have observed that the Fourth Circuit has no unyielding first-to-file rule." Gibbs, 421 F. Supp. 3d at 286 (quotation omitted); see CACI Int'l Inc. v. Pentagen Techs. Int'l, Ltd., 70 F.3d 111, 1995 WL 679952, at *6 (4th Cir. 1995) (unpublished table decision) (per curiam). The first-to-file rule "is not absolute" and not "mechanically applied." Harris v. McDonnell, No. 5:13cv00077, 2013 WL 5720355, at *3 (W.D. Va. Oct. 18, 2013) (unpublished). The decision to apply the rule "is an equitable determination that is made on a case-by-case, discretionary basis." Elderberry of Weber City, LLC v. Living Ctrs.-Se., Inc., No. 6:12-CV-52, 2013 WL 1164835, at *4 (W.D. Va. Mar. 20, 2013) (unpublished); see Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003).

To determine whether the first-to-file rule applies, courts in the Fourth Circuit consider "1) the chronology of the filings, 2) the similarity of the parties, and 3) the similarity of the issues at

4

stake." Berger v. U.S. Dep't of Justice, No. 5:16-CV-240, 2016 WL 3620752, at *8 (E.D.N.C. June 29, 2016) (unpublished); see, e.g., Barrett v. USA Serv. Fin., LLC, No. 4:18-CV-155, 2019 WL 1051177, at *5 (E.D.N.C. Mar. 5, 2019) (unpublished); Dillon v. BMO Harris Bank, N.A., 16 F. Supp. 3d 605, 617 (M.D.N.C. 2014); Nutrition & Fitness, Inc., 264 F. Supp. 2d at 360.

The Canas litigation is not "pending" for purposes of the first-to-file rule. The Canas litigation has settled and, in accordance with the order approving settlement, the court has dismissed with prejudice the underlying claims in Canas. See Canas, [D.E. 55]. Although defendants have filed a motion to reopen the settlement agreement, a motion to transfer, and a motion to consolidate, these motions have not restarted the litigation. Cf. Canas, [D.E. 60, 62, 80].

In opposition, defendants argue that Canas "remains active with motions pending before Judge Robert Blakey to consolidate Canas and Winking into a single case and to pay the claims of any new plaintiffs from the reserve fund created by the Canas settlement." [D.E. 26] 2 n.1. The Canas court, however, denied these specific motions. See Canas, [D.E. 80]. Moreover, even if there were pending, substantive motions, settled cases that have been dismissed do not become "pending" just because a party files a post-settlement motion or because a party disputes the distribution of settlement funds. Furthermore, consolidating this case, in which there is no settlement agreement and all claims remain unresolved, with the Canas litigation, in which there is a settlement agreement and all claims have been dismissed with prejudice, does not aid "sound judicial administration." Ellicott Mach. Corp., 502 F.2d at 180 n.2. Therefore, in deciding whether the first-to-file rule applies, the court focuses on the Winking action.

The Winking action began on April 14, 2022, and plaintiffs in this case filed their complaint on April 19, 2022. That the plaintiffs in this case filed only five days after the plaintiffs in Winking weighs against applying the first-to-file rule. See Barrett, 2019 WL 1051177, at *6 (finding that, while not determinative, "19 days is a relatively short time period separating the two actions");

5

Harris, 2013 WL 5720355, at *4 ("a rigid application of the first-to-file rule is unwarranted when the second action was filed only weeks after the first action."). Relatedly, "courts also consider how far each case has progressed" when considering the chronology of the filings. Elderberry of Weber City, LLC, 2013 WL 1164835, at *4; Harris, 2013 WL 5720355, at *5. "[C]ourts have declined to defer to the first-filed action when little if anything has been done to advance that action for trial." Affinity Memory & Micro., Inc. v. K & Q Enters, Inc., 20 F. Supp. 2d 948, 954 (E.D. Va. 1998). Plaintiffs in this case and in Winking have not been granted collective action certification and neither action has significantly progressed towards trial. Therefore, the similar filing dates and status of this case and the Winking case factor against applying the first-to-file rule.

Second, although some parties overlap in both cases, significant differences exist. This action involves Smithfield Foods, Smithfield Packaged Meats, Smithfield Fresh Meats, and Smithfield Distribution. The Winking action only actively involves Smithfield Fresh Meats. Although Smithfield Distribution also was a defendant in Winking, Smithfield Distribution has settled. See Winking, [D.E. 31]. With Canas no longer pending and Smithfield Distribution having settled in Winking, it is unclear from defendants' own memorandum that there is any overlap at all, let alone a significant enough one to justify implementing the first-to-file rule. See [D.E. 12] 9.

As for the plaintiffs in each action, all plaintiffs are former hourly employees. However, the Winking action specifically excludes the North Carolina plaintiffs and this action exclusively involves the North Carolina plaintiffs. See [D.E. 12] 10 n.3. Nonetheless, defendants cite Waithaka v. Amazon.com, Inc., 404 F. Supp. 3d 335, 351 (D. Mass. 2019), for the proposition that mutually exclusive subclasses of plaintiffs do not prevent applying the first-to-file rule. True enough. But, defendants concede that there is only "some overlap with the proposed class in Winking." [D.E. 12] 8. The minimal overlap between the plaintiffs and defendants actively litigating in Winking and this case weigh against applying the first-to-file rule.

Third, the issues involved in this case and Winking are nearly identical. Both actions are based on FLSA overtime calculations involving the "responsibility bonus." In fact, the only material difference between any of the claims in the cases arose in Canas, which also included a claim under Illinois state law. See Canas, [D.E. 1]. With Canas no longer pending, this case and Winking involve identical claims, and this factor weighs in favor of applying the first-to-file rule.

Defendants cite Meyers v. GC Servs., L.P., No. 3:09-1242, 2010 WL 11583546, at *2 (S.D. W. Va. Mar. 18, 2010) (unpublished), as an example where a court "transferred a collective action to a Missouri District Court because the putative nationwide collective action in the Missouri District Court encompassed the same time period, individuals, and claims as the claims asserted in West Virginia." [D.E. 26] 7. In Meyers, however, the court noted that "[p]laintiffs are by definition part of the putative collective action filed in [the first-filed case] and vice-versa." 2010 WL 11583546, at *2. In this case, as defendants concede, there is only "some overlap with the proposed class in Winking." [D.E. 12]. Moreover, Meyers involved two cases with identical defendants. Meyers, 2010 WL 11583546, at *1. This case and Winking do not involve identical defendants, especially given that Smithfield Distribution settled in the Winking action. See [D.E. 12] 9. Additionally, the Meyers court considered the timing of the second action to be "months later" than the first filing. Meyers, 2010 WL 11583546, at *2. In contrast, the complaints in this case and Winking were filed mere days apart.

Next, defendants cite Ortiz v. Panera Bread Co., No. 1:10CV1424, 2011 WL 3353432, *1–2 (E.D. Va. Aug. 2, 2011) (unpublished). The Ortiz court applied the first-to-file rule in an FLSA action even though the complaints were filed four days apart. See id. The Ortiz court noted that "the first-to-file rule is particularly appropriate in the context of competing FLSA collective actions, which threaten to present overlapping classes, multiple attempts at certification in two different courts, and complicated settlement negotiations." Id.; see Fisher v. Rite Aid Corp., No. 09-1909,

7

2010 WL 2332101, at *2 (D. Md. June 8, 2010) (unpublished). Specifically, the Ortiz court noted that:

> The parties in these two cases are identical. Panera is the defendant employer in both actions. Both Ortiz and the Lewis Plaintiffs seek to represent the exact same class of current and former Assistant Manager employees who worked at Panera stores nationwide during the past three years. Jaime Ortiz is a member of the putative collective class alleged in Lewis. And the Lewis Plaintiffs are now members of the putative collective class alleged in Ortiz. In both lawsuits, Plaintiffs seek to recover from Panera.

Ortiz, 2011 WL 3353432, at *1.

The overlap present in Ortiz does not exist in this case. Neither Winking nor this case seek to represent nationwide classes of employees, and the named plaintiffs in this case are not, nor can they be, members of the putative class in Winking. Moreover, unlike in Ortiz, there are significant gaps in the overlap between defendants in this case and in Winking. Ultimately, although the court recognizes the usefulness of applying the first-to-file rule concerning FLSA collective actions, the facts of this case counsel against applying it in this case.

In summary, after considering the relevant factors and considering the interests of judicial economy and equity, the court denies defendants' motion to transfer. Because the court does not find transfer proper, the court need not reach plaintiffs' arguments concerning personal jurisdiction. See [D.E. 25] 3.

III.

In sum, the court DENIES defendants' motion to dismiss or transfer proceedings [D.E. 11].

SO ORDERED. This 19 day of December, 2022.

JAMES C. DEVER III
United States District Judge